# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| In Re:<br><br>**MICHAEL R. CHRISTIAN,**<br><br>**Debtor.** | **Bankruptcy Case**<br>**No. 12-00683-JDP** |

_____

# MEMORANDUM OF DECISION

_____

**Appearances:**

Gale Merrick, MERRICK LAW OFFICE, Boise, Idaho, Attorney for Debtor.

Jeremy Gugino, Boise, Idaho, Chapter 7 Trustee.

Loren Messerly, GREENER BURKE SHOEMAKER, P.A., Boise, Idaho, Attorney for Idaho Trust Bank, Creditor.

## *Introduction*

Chapter 7[1] debtor Michael R. Christian ("Debtor") filed a Motion to

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION – 1

Compel Abandonment in which he asks for an order deeming his interest in a pending legal action with Idaho Trust Bank ("Creditor") abandoned from his bankruptcy estate. Dkt. No. 52. The litigation with Creditor is the subject of a civil action currently on appeal before the Idaho Supreme Court wherein Debtor is the appellant. The chapter 7 trustee, Jeremy Gugino ("Trustee"), does not oppose the requested abandonment; indeed, he filed a brief in support of Debtor's motion. Dkt. No. 69. However, Creditor filed an objection and brief in opposition to the motion. Dkt. Nos. 59 and 71.

The Court conducted an evidentiary hearing on August 21, 2012 and thereafter took the issues under advisement. Dkt. No. 73. The Court has now considered the testimony and evidence and the arguments of counsel. This Memorandum finds the facts, states the Court's legal conclusions, and disposes of the motion. Fed. R. Bankr. P. 7052; 9014.

### *Facts*

Debtor is a practicing attorney who also engaged in real property development through a limited liability company known as Trinity

MEMORANDUM OF DECISION – 2

Investments, LLC ("Trinity").  One of the projects Trinity undertook

involved the construction of certain townhouses, which project was

principally financed through a loan to Trinity for $5,625,000 made by

Creditor in December, 2006.  Exh. 200b.  Debtor executed a personal

guarantee for this loan.  *Id*.  Trinity ultimately defaulted on the loan and

Creditor sued Trinity and Debtor in state court.  While Debtor actively

contested Creditor's claim against him based upon the personal guarantee,

on March 7, 2012, Creditor obtained a state court judgment against Debtor

in the amount of $1,743,448.01.[2]  Exhs. 200a, 200e.  Contending that the

state court erred, and that he had a good defense to Creditor's claim, on

March 15, 2012, Debtor appealed that judgment to the Idaho Supreme

Court, where the appeal currently awaits final briefing, oral argument, and

decision.

　　　　Presumably worried about Creditor's collection efforts, on March 29,

2012, Debtor filed a chapter 7 petition.  Dkt. No. 1.  In his schedules,

────────────────────

　　　[2]  The project was put into receivership, the property was liquidated and
Creditor prevailed on summary judgment in the state court action.  After a
motion for reconsideration, a final judgment was entered.  Exhs. 200b-200g.

MEMORANDUM OF DECISION – 3

Debtor listed only eleven creditors.  Dkt. No. 41.  Of those creditors, five

hold secured claims, and three hold claims based on debts associated with

Trinity.  One of the debts is for attorney's fees incurred in connection with

Creditor's lawsuit.  The attorney listed in the schedules is Debtor's father-

in-law, and the firm listed is Debtor's own place of employment, where he

and his father-in-law both practice law.  Another is an undocumented debt

owed to Debtor's father.  As the debts are owed to his relatives and law

firm, Debtor testified he might repay these debts despite the bankruptcy.

The other unsecured claim in Debtor's case is the judgment debt owed to

Creditor.  *Id.*

Debtor listed three parcels of real property in his bankruptcy

schedules having a combined value of $659,991:  his homestead, in which

he has approximately $38,000 in exempt equity; a second home in Pine,

Idaho; and a cabin in McCall, Idaho.  There are mortgages against both the

Pine and McCall homes with balances that exceed the properties'

respective values.  *Id*.  Debtor's schedules also list $465,575.59 in personal

property, most of which has been claimed exempt, including an annuity

MEMORANDUM OF DECISION – 4

valued at $200,000. *Id*. While Trustee objected to Debtor's annuity exemption claim, that matter was stayed by stipulation of the parties pending resolution of the state court appeal. Dkt. Nos. 74-75.

At some point after the petition was filed, Creditor offered Trustee $20,000 to settle the pending state court litigation and the appeal.[3] Trustee rejected this offer. On June 21, 2012, Debtor filed a motion to compel the Trustee to abandon Debtor's rights in the litigation, and promised if that occurs, that he will actively pursue the appeal and his defense to Creditor's claims against him at his own expense. Dkt. No. 52. Not surprisingly, Creditor objected to Debtor's proposal and motion. Dkt. No. 59.

### *Analysis and Disposition*

Under § 541(a), Debtor's claims against Creditor asserted in the pending litigation became property of the bankruptcy estate when he filed the bankruptcy petition. *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*,

---

[3] While nothing was submitted in evidence to show this offer was made, counsel for all of the parties discussed it openly at the hearing.

MEMORANDUM OF DECISION – 5

789 F.2d 705, 707 (9th Cir. 1986) (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 & n.9) ("The scope of section 541 is broad, and includes causes of action.")  And Trustee, as the representative of the bankruptcy estate, is "the proper party in interest, and the only party with standing" to prosecute causes of action belonging to the estate.  *In re Eisen*, 31 F.3d 1447, 1451 n.2 (9th Cir. 1994) (internal quotations omitted).  As a result, in this case, Trustee was faced with the options of either prosecuting, compromising or abandoning Debtor's claims and the appeal.  Debtor effectively forced Trustee's hand when he filed the motion to compel abandonment.

Section 554(b) provides that upon request by a party in interest, and after notice and a hearing, "the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  In order to prevail on his motion, Debtor must prove either that prosecution of the appeal by Trustee would be burdensome to the estate, or that his claims against Creditor are of inconsequential value and benefit to the estate.  *Johnston v.*

MEMORANDUM OF DECISION – 6

*Webster (In re Johnston)*, 49 F.3d 538, 540 (9th Cir. 1995); *Viet Vu v. Kendall (In re Viet Vu)*, 245 B.R. 644, 647 (9th Cir. BAP 2000); *In re Zaleha*, 94 IBCR 81, 81 (Bankr. D. Idaho 1994). Debtor has made the requisite showing.

In his brief, Trustee observes that, for Trustee to pursue the appeal, the bankruptcy estate would potentially incur considerable expense, with the results of that appeal, at best, uncertain. In the event the appeal is successful, the state court action would likely be remanded to the district court for trial.[4] If Trustee were successful at trial, no money would come directly into the estate, however a very large claim would be eliminated, which would arguably benefit the remaining creditors.[5] But as Creditor points out, those remaining creditors consist of Debtor's father and father-in-law, both of whom Debtor suggests he may ultimately pay even though the debts are discharged in his bankruptcy case. *See* § 524(f) (stating that

---

[4] Or, at least, Creditor's state court judgment against Debtor would no longer be preclusive proof of its claim, and Trustee could object to its allowance in the bankruptcy case.

[5] Creditor's claim represents approximately 98% of the total unsecured claims in the case.

MEMORANDUM OF DECISION – 7

"[n]othing . . . prevents a debtor from voluntarily repaying any debt.")

Creditor's principal complaint is that by granting abandonment, and thereby allowing Debtor to proceed with the appeal, Creditor will incur additional litigation costs to defend it, all without any hope of recovering those fees from Debtor regardless of the outcome of the appeal.[6]  However, the Court declines to give any weight to such an argument.  In *In re Johnston*, where the debtors argued that the bankruptcy court should consider the possibility that abandonment would produce adverse tax

---

[6]  The Court expresses no opinion regarding Creditor's conclusion in this regard, albeit it is arguably contrary to the law discussed by this Court in *Richardson v. Runge Finance Co. (In re Richardson)*, Case No. 03-06283-TLM, Dkt. No. 10.  After discharge, the debtor in *Richardson* challenged the enforceability of a post-petition reaffirmation agreement which the creditor was seeking to collect in state court.  The state court deemed the reaffirmation agreement to be valid, and ultimately awarded attorneys fees to the creditor.  The bankruptcy court later found that the reaffirmation agreement was indeed invalid, but upheld the state court's fee award against the debtor on the grounds that "the liability he incurred in the nature of attorney's fees and costs as a result of that continued litigation [was] outside the reach of the discharge."  *Id*. at p. 10.  The *Richardson* court stated, "while his bankruptcy did protect him from the results of his past acts, including attorney's fees associated with those acts, it did not give him carte blanche to go out and commence new litigation about the contract without consequences."  *Id*.  quoting *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 534 (9th Cir. 1998):  *See also Bishop v. Conley (In re Conley)*, 00.1 IBCR 15, 19 (Bankr. D. Idaho 2000).

MEMORANDUM OF DECISION – 8

consequences for them, the bankruptcy court, and ultimately the Ninth Circuit, held that "the bankruptcy court was not required to consider these [tax] consequences prior to authorizing abandonment." 49 F.3d at 541. If adverse financial consequences flowing to the *debtor* from an abandonment need not be considered by the Court, then surely the potential costs to a *creditor* resulting from an abandonment are certainly not relevant when deciding a motion to compel abandonment.

Debtor has offered to prosecute the appeal completely at his expense. As Trustee noted, this effectively offers him, on behalf of the estate, "a free spin at the wheel," while at the same time, the merits of Creditor's claim will be tested. Creditor contends that Trustee should take the $20,000 it has offered him to settle this dispute, because the settlement offer ends the appeal, thereby rendering the litigation non-burdensome to the estate, while at the same time bringing $20,000 into the estate. The Court disagrees with Creditor.

While an influx of $20,000 to a bankruptcy estate is substantial, in this case, it likely results in little benefit for the other creditors. In addition

MEMORANDUM OF DECISION – 9

to deducting his statutory compensation and expenses, Trustee must use a

portion of the funds pursue the litigation over Debtor's annuity

exemption. Of any funds that remain, Creditor, as the holder of the largest

claim in the case, would receive about 98% of the distribution to creditors.

On the other hand, if Debtor is successful in defeating Creditor's claim in

state court, if they sought to do so, the remaining creditors would likely be

entitled to receive a much larger distribution.[7]

In this case, Debtor seeks to compel abandonment with the Trustee's

blessing. The objector is a creditor who will be forced to continue to

defend an appeal if the abandonment is approved. However, Creditor is

in no different position than had there been no bankruptcy. For Creditor,

defending its rights against Debtor is a cost of doing business, however

unfair it may appear. When the Court focuses on the requirements of

§ 554(b), on whether Trustee's prosecution of the appeal is burdensome to

---

[7] As a practical matter, if Debtor successfully defends against Creditor's claims, since his other creditors are either secured, or relatives whom he intends to pay, it is quite likely that this case may be dismissed, and the litigation over the exempt status of Debtor's annuity avoided.

MEMORANDUM OF DECISION – 10

the estate, or whether the appeal itself is of inconsequential value and

benefit to the estate, it is clear the abandonment motion has merit.

    It would be burdensome to require Trustee to prosecute the appeal

while abandonment would make it possible for the appeal to be finally

decided without expense to the estate, and with a chance that the result

would benefit the creditors not involved in the appeal.  Trustee's

acceptance of Creditor's settlement offer would generate few funds into

the estate for distribution to creditors other than Creditor.  Simply put, the

appeal is of little consequence to the estate unless it can be won by Debtor.

As Debtor has offered to prosecute the appeal at no expense to Trustee,

abandonment is appropriate.

### *Conclusion*

    Debtor's motion will be granted by separate order.

Dated:  October 10, 2012

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 11